[Cite as *State v. Pierce*, 2011-Ohio-4873.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

STATE OF OHIO

       Plaintiff-Appellee

v.

CLIFFORD PIERCE

       Defendant-Appellant

:
:
:
:
:
:
:
:
:
:
:
:

Appellate Case No. 24323

Trial Court Case No. 10-CRB-1913

(Criminal Appeal from
 Dayton Municipal Court)

. . . . . . . . . . .

O P I N I O N

Rendered on the 23rd day of September, 2011.

. . . . . . . . . . .

JOHN J. DANISH, Atty. Reg. #0046639 and STEPHANIE L. COOK, Atty. Reg. #0067101, by TROY B. DANIELS, Atty. Reg. #0084957, City of Dayton Prosecutor's Office, 335 West Third Street, Room 372, Dayton, Ohio 45402
     Attorney for Plaintiff-Appellee

WILMER J. DECHANT, JR., Atty. Reg. #0085084, 257 Regency Ridge Drive, Centerville, Ohio 45459
     Attorney for Defendant-Appellant

. . . . . . . . . . . .

FAIN, J.

{¶ 1} Defendant-appellant Clifford Pierce appeals from his conviction and sentence for Domestic Violence, following a bench trial. Pierce was also found guilty of Assault, but that conviction, involving the same victim, was merged into the Domestic Violence conviction.

{¶ 2}   Pierce contends that the trial court erred when it sustained an objection to a line of questioning he was initiating, during cross-examination of the complaining witness, concerning an allegedly inconsistent prior statement she had made to "domestic relations court" (presumably the Montgomery County Common Pleas Court, Division of Domestic Relations).   The State contends that this line of questioning was properly excluded as a sanction for Pierce's having violated his reciprocal discovery obligation under Crim.R. 16, by not having disclosed the prior statement to the prosecution; that the trial court properly excluded this line of questioning because it did not concern a fact of consequence to the determination of the action, as required by Evid.R. 613(B)(2) for extrinsic evidence of a prior inconsistent statement; and that Pierce did not preserve the error by proffering the prior inconsistent statement.

{¶ 3}   We conclude that the reciprocal discovery obligations imposed upon a defendant under Crim.R. 16 do not extend to cross-examination questioning of a witness concerning a prior inconsistent statement; that it is not clear from the record that the trial court excluded this evidence as a sanction for a discovery violation; that questions put to a witness for the adverse party, during cross-examination, concerning a prior inconsistent statement do not constitute extrinsic evidence of a prior inconsistent statement, and are therefore not subject to the fact-of-consequence limitation in Evid.R. 613(B)(2); and that   under Evid.R. 103(A)(2), a proffer is not required to preserve error in excluding evidence during cross-examination.   Accordingly, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.

## II

{¶ 4} One Friday in March, 2010, Denise Pierce came home after serving on a jury. She and her husband, defendant-appellant Pierce,[1] got into an argument about some bags filled with grocery bags that were in the kitchen. Pierce did not accept Denise's explanation of how they came to be there, and began a tirade ("yelling, screaming, demeaning, tone") that lasted "a long time" – "I could say an hour." Pierce and his wife then left the home separately.

{¶ 5} When Denise returned home, Pierce was there, and the tirade resumed. Denise went upstairs, alone, to retire to bed. At about 1:00 in the morning, Pierce woke Denise up and asked about the bags. He accused her of lying. He started choking her:

{¶ 6} "Q. So when you say that he started to strangle you[,] describe exactly what he did and where he was standing.

{¶ 7} "A. I know that he was standing by the side of the bed that is nearest the door. I remember somehow at that point I was laying on my back so basically lying – so if this is the bed perpendicular to it with my head away from the door that way. I remember his hand around my neck.

{¶ 8} "Q. Was there pressure?

{¶ 9} "A. There was sufficient pressure because it scared me.

{¶ 10} "Q. Now when he had his hand around your neck do you remember

---

[1] Defendant-appellant will be referred to herein as Pierce. His wife, the victim, will be referred to as Denise Pierce, or Denise.

whether it affected your breathing?

{¶ 11} "A.   It was and that's what scared me?

{¶ 12} "Q.   Did you try to make any sounds to say anything?

{¶ 13} "A.   I remember screaming because the thought popped in my head see if you can scream so you can breath[e].   See if you can breathe.   I did manage to make a sound but it was raspy and that scared me more.

{¶ 14} "Q.   By raspy do you mean – what do you mean by raspy?

{¶ 15} "A.   As if your airway was being constricted.

{¶ 16} "Q.   At any time did the pressure increase or decrease?

{¶ 17} "A.   I do remember after I screamed that he leaned on me more.   He further constricted my neck.   I remember at that time I put both of my hands around his wrist trying to push away."

{¶ 18} When the strangling stopped, Pierce told his wife to find out "who, when, and why" the bags were back in the house.   He told her "if you don't[,] you are going to have a very bad day."   He then left the room.

{¶ 19} Denise Pierce was afraid to use the home phone because she was afraid Pierce would hear her dialing or speaking.   She texted her sister on her cell phone: "Call me in a.m. first thing.   Send police and call dad.   I need to get out of house if I say the word luck."   She explained that "luck" was a code word she would use.

{¶ 20} Denise Pierce's sister called her on her cell phone some time later that morning.   Denise had a whispered conversation with her sister, because Denise was afraid that Pierce would hear her.   After this conversation, Denise sent her sister

another text message: "Call at 8:15 so it won't seem so odd. I'll talk like you need me to come over."

{¶ 21} When her sister called her later, on the home telephone this time, Denise acted as if she were going to go over to her sister's house to watch her sister's children. Denise left the house, and went to her sister's house. Later that day, Denise and her sister went to the police station, and Denise filed a police report concerning what had occurred.

{¶ 22} Pierce was arrested and charged with Domestic Violence, in violation of R.C. 2929.25(A)(1), a first-degree misdemeanor, and Assault, in violation of R.C. 2903.13(A), a first-degree misdemeanor. Following a bench trial, Pierce was found guilty of both charges. The trial court merged the Assault conviction into the Domestic Violence conviction, and sentenced Pierce to 180 days in jail, with 177 days suspended, and with credit for three days served, and imposed basic supervised probation, including an assessment for substance abuse, anger management, and Stopping the Violence classes.

{¶ 23} From his conviction and sentence, Pierce appeals.

II

{¶ 24} Pierce's sole assignment of error is as follows:

{¶ 25} "THE TRIAL COURT ERRED IN NOT ALLOWING TESTIMONY OF A PRIOR INCONSISTENT STATEMENT OF ALLEGED VICTIM."

{¶ 26} During Pierce's cross-examination of Denise Pierce, the following colloquy occurred:

{¶ 27} "Q.   Then at some point you go to domestic relations court.   Do you recall that?

{¶ 28} "THE STATE: Objection, Your Honor.

{¶ 29} "THE COURT: Why are we doing this?

{¶ 30} "THE DEFENSE: Well[,] because of a statement she made Your Honor.

{¶ 31} "THE COURT: About this?

{¶ 32} "THE DEFENSE: Yes.

{¶ 33} "THE COURT: To?

{¶ 34} "THE DEFENSE: To the domestic relations court (inaudible) that we plan to introduce.

{¶ 35} "THE STATE: I've never seen this Your Honor.

{¶ 36} "THE COURT: Did you have discovery on him?

{¶ 37} "THE STATE: It[']s (inaudible) just reciprocal.

{¶ 38} "THE COURT: You didn't give it to them?

{¶ 39} "THE DEFENSE: They provided it to me.   (Inaudible)

{¶ 40} "THE STATE: We don't have it.

{¶ 41} "THE DEFENSE: Well even if it's not introduced Your Honor[,] can we question her about that form that's relevant to this issue?

{¶ 42} "THE COURT: How is it relevant?

{¶ 43} "THE DEFENSE: It's her statement of what occurred.

{¶ 44} "THE STATE: Witnesses prior statements I believe Your Honor need to be disclosed during discovery.

{¶ 45} "THE DEFENSE: What I'm saying Your Honor is that I want to question

her about the statement she gave. Whether it's to be introduced or not into evidence they can argue that it shouldn't be introduced because it wasn't turned over[,] but her statements about this incident are relevant to this trial.

{¶ 46} "THE COURT: Well yeah[,] but if they are not coming in they are not coming in. I do not need to hear it.

{¶ 47} "THE STATE: (Inaudible) evidence rule.

{¶ 48} "THE DEFENSE: And I would argue Your Honor it's an (inaudible) [analogous?] to the cell phone which we've been discussing which I objected to which I objected to because the sister can't lay the foundation for it.

{¶ 49} "THE COURT: Well[,] she's been testifying to what she sent[,] not what the sister received.

{¶ 50} "THE DEFENSE: But she –

{¶ 51} "THE COURT: She's been testifying that that's the message that she sent.

{¶ 52} "THE DEFENSE: And I'm asking her to testify about a statement she gave.

{¶ 53} "THE COURT: Hold on.

{¶ 54} "THE DEFENSE: And I don't – we don't have to use that evidence – that document. I can just question her about it Your Honor.

{¶ 55} "THE STATE: This is – not if the Rules of Evidence (inaudible) apply. Just one second.

{¶ 56} "THE COURT: What one are you on?

{¶ 57} "THE STATE: Looking at Rule 8.01 [sic] subsection 'D.'

{¶ 58} "THE COURT: You are at 8:01 [sic] what?

{¶ 59} "THE STATE: Sub D.

{¶ 60} "THE COURT: 'D'

{¶ 61} "THE STATE: Sub 1 – I am saying that the testimony he wishes to offer is hearsay because it is a statement that was not made in this court and does not exempt it because it (inaudible) testifies a [sic] trial or a hearing and is subject to cross-examination. (Inaudible) the statement is (A) I'm assuming he's going to say it's inconsistent with her current testimony only if it was given under oath at that time subject to cross-examination by the party against whom the statement is being offered. I am the party against whom the statement is being offered. I was not allowed to cross-examine her at the time those statements were made and therefore they are not exempt under hearsay.

{¶ 62} "THE DEFENSE: And I will say for impeachment purposes Your Honor the statements should be allowed.

{¶ 63} "THE STATE: Your Honor under Rule 6.16 [sic] Methods of Impeachment it's the facts contradicting the witnesses [sic] testimony may be shown for the purpose of impeaching a witnesses [sic] testimony. However, if offered for the sole purpose of impeaching a witnesses [sic] testimony (inaudible) evidence of contradiction is inadmissable unless one of the following apply. I'd like to hear how one of the following [–]

{¶ 64} "THE DEFENSE: This is not extrinsic evidence.

{¶ 65} "THE STATE: It's not evidence that's coming from her. That makes it extrinsic.

{¶ 66} "THE DEFENSE: Sure it is. It came from her. The statement came from her.

{¶ 67} "THE COURT: No[.]

{¶ 68} "THE STATE: We are talking about testimony.

{¶ 69} "THE COURT: We are not doing this. I'm sustaining the objection."

{¶ 70} It appears from the above-quoted colloquy that Pierce was attempting to cross-examine Denise Pierce with a written statement she provided to the domestic relations court that allegedly contradicted her direct testimony in this case. During the colloquy, Pierce made it clear that he was not attempting to introduce the prior inconsistent statement into evidence, but was merely attempting to question Denise Pierce concerning her prior statement.

{¶ 71} To begin with, both parties cite *State v. Sage* (1978), 31 Ohio St.3d 173, second paragraph of syllabus, for the proposition that the standard of review for the admission or exclusion of evidence is abuse of discretion, and further cite *Pons v. Ohio St. Med. Bd.* (1993), 66 Ohio St.3d 619, for the proposition that abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."

{¶ 72} We have rejected the more-than-an-error-of-law formulation for abuse of discretion, concluding that "[n]o court * * * has the authority, within its discretion, to commit an error of law." *State v. Beechler*, 2010-Ohio-1900, ¶ 70. Thus, in the case before us, if the trial court committed a legal error in sustaining the State's objection to Pierce's line of questioning addressed to Denise Pierce concerning her prior inconsistent statement, then that ruling necessarily constitutes an abuse of

discretion, since the trial court had no discretion to commit a legal error.

{¶ 73} The State argues that the trial court correctly excluded this line of questioning as a sanction for Pierce's violation of his obligation to provide reciprocal discovery under Crim.R. 16. Division (A) of that Rule makes it clear that the discovery obligations set forth therein "apply to the defense and the prosecution equally, and are intended to be reciprocal." But the specific discovery obligations of the Rule are set forth in division (B) of the Rule, and are imposed upon the prosecuting attorney. To give any effect to the reciprocity requirement set forth in division (A), it necessarily follows that the obligations in division (B) apply, to the extent possible, upon the defendant in reciprocal situations. The requirements in sub-divisions (1) through (6) of Crim.R. 16(B) clearly do not apply to the statement Denise Pierce made to the domestic relations court.

{¶ 74} Crim.R. 16(A)(7) imposes a discovery obligation with respect to: "Any written or recorded statement by a witness in the state's case-in-chief, or that it reasonably anticipates calling as a witness in rebuttal." Applying this discovery obligation to Pierce in reciprocal situations, it would require him to make discovery with respect to any written or recorded statement by a witness in his own case-in-chief, but not with respect to a written or recorded statement that Pierce intended to use in cross-examining a witness called by the State. Similarly, the State is not required, by this subdivision of the Rule, to disclose written or recorded statements that it intends to use to cross-examine a witness in the defendant's case-in-chief.

{¶ 75} A literal construction of Crim.R. 16(B)(7) – that as applied to both the

State and the defendant, there is an obligation to make discovery of written or recorded statements only by the State's witnesses – would make no sense; it would require the defendant to make discovery of written or recorded statements by witnesses that the State anticipates calling as a witness in rebuttal, but the defendant cannot reasonably be expected to know what witnesses the State might anticipate calling in rebuttal. A more sensible construction of Crim.R. 16(B)(7) is that, like the rest of the Rule, it applies in reciprocal situations; each party is required to make discovery of written or recorded statements by its own witnesses, but not of statements by a witness for the adverse party. The one exception is set forth in Crim.R. 16(B)(1), which requires discovery of written or recorded statements by the defendant or a co-defendant. Of course, as the State noted in the colloquy quoted above, the State is the party adverse to the defendant; the victim is not the party adverse to the defendant. Therefore, Crim.R. 16(B)(1) does not lend itself to reciprocal application.

{¶ 76} We conclude that there is nothing in Crim.R. 16 that required Pierce to make discovery of Denise Pierce's prior inconsistent statement. Therefore, the trial court could not properly invoke a sanction based upon Pierce's failure to have made discovery of that statement. (A sanction might have been appropriate if there were a case management plan requiring reciprocal discovery of witness statements. See, e.g., *State v. Flanigan*, Montgomery App. No. 21460, 2007-Ohio-3158, ¶ 46-70.) Furthermore, it is not at all clear from the colloquy quoted above that the trial court ruled Pierce's proposed line of questioning inadmissible as a discovery sanction.

{¶ 77} The State also argues that Pierce could not properly question Denise

Pierce about her prior inconsistent statement because the subject matter of the statement was not "a fact that is of consequence to the determination of the action other than the credibility of a witness," as required by Evid.R. 613(B)(2)(a).

{¶ 78} Evid.R. 613(B) concerns extrinsic evidence of a prior inconsistent statement of a witness. We agree with Pierce that Denise Pierce's own acknowledgment of a prior inconsistent statement, assuming she could have been persuaded to acknowledge it, would not have been extrinsic evidence of a prior inconsistent statement. Otherwise, we would have difficulty finding that any evidence of a prior inconsistent statement of a witness is other than extrinsic, and yet the Rule clearly makes this distinction.

{¶ 79} The relationship between intrinsic evidence of a prior inconsistent statement and extrinsic evidence of the same is well set out in *State v. Reed*, 155 Ohio App.3d 435, 2003-Ohio-6536, ¶ 28-31:

{¶ 80} "Turning to the impeachment of Stacy Young, Reed claims, without any specific citation to the record, that the trial court denied him the opportunity to impeach her testimony through prior inconsistent statements. He indicates that Young testified during cross-examination that she did not remember statements that she had made to the police during her first police interview and that Evid.R. 613 permits the admission of extrinsic evidence to impeach a witness under those circumstances. The state responds that it has reviewed the entire portion of Young's testimony, and the record indicates that Reed's defense counsel did, in fact, attempt to impeach Young with police investigation reports. Although not cited by the parties, the record further indicates that defense counsel sought to introduce extrinsic

evidence of Young's first police interview through testimony by Detective David Eshelman. The trial court ruled that Young's 'continual lack of recollection' did not create an inconsistency that can be impeached. Thus, it did not allow defense counsel to call Detective Eshelman for the purpose of providing extrinsic evidence of Young's first interview with him.

{¶ 81} "Evid.R. 613(B) allows the use of extrinsic evidence to impeach by prior inconsistent statement when the following two conditions are satisfied: '(1) If the statement is offered solely for the purpose of impeaching the witness, the witness is afforded a prior opportunity to explain or deny the statement and the opposite party is afforded an opportunity to interrogate the witness on the statement or the interests of justice otherwise require; (2) The subject matter of the statement is one of the following: (a) A fact that is of consequence to the determination of the action other than the credibility of a witness; (b) A fact that may be shown by extrinsic evidence under Evid.R. 608(A), 609, 616(B), or 706; (c) A fact that may be shown by extrinsic evidence under the common law of impeachment if not in conflict with the Rules of Evidence.' Evid.R. 613(B). We have stated that under this rule:

{¶ 82} " 'If the witness admits making the conflicting statement, then there is no need for extrinsic evidence. If the witness denies making the statement, extrinsic evidence may be admitted, provided the opposing party has an opportunity to query the witness about the inconsistency, and provided the "evidence does not relate to a collateral matter[.] * * * " However, if the witness says he cannot remember the prior statement, "a lack of recollection is treated the same as a denial, and use of extrinsic impeachment evidence is then permitted." ' (Citations omitted.) *State v. Harris*

(Dec. 21, 1994), Montgomery App. No. 14343, 1994 WL 718227; see, also, *State v. Taylor* (July 26, 1996), Montgomery App. No. 15119, 1996 WL 417098 ('A prior statement of a witness may be proved by extrinsic evidence if the witness denies the statement or claims he cannot remember the statement').

{¶ 83} "In her cross-examination, defense counsel asked Young whether she recalled questions by Detective Eshelman during her first police interview and whether she remembered her answers to those questions. Young indicated that she recalled being asked whether other individuals had talked to her about the shooting and what Reed had said to her about it. However, she repeatedly testified that she did not remember her responses to many of those questions. We agree with Reed that Young's lack of memory regarding her first interview laid a foundation for the admission of extrinsic evidence, such as the testimony of Detective Eshelman, regarding her prior statements. Accordingly, we conclude that the trial court erred when it did not permit defense counsel to present that testimony."

{¶ 84} The above-quoted discussion of Evid.R. 613(B) makes it clear that asking a witness about a prior inconsistent statement does not involve extrinsic evidence of that prior inconsistent statement.  It is only when the party examining the witness wants to offer evidence of the prior inconsistent statement other than the witness's own acknowledgment of that statement that extrinsic evidence is involved, and the requirements of Evid.R. 613(B) apply.

{¶ 85} In the case before us, Pierce's trial counsel made it clear that he was not seeking to introduce Denise Pierce's prior inconsistent statement into evidence – he was merely seeking to question her about it.  The trial court erred when it

prevented him from doing so.

{¶ 86} The State makes a further argument that: "the Defendant never proffered the alleged statement into the record to preserve it for appeal." It is true that Denise Pierce's prior, allegedly inconsistent statement was never proffered. This places us at a disadvantage in determining whether the trial court's erroneous ruling was prejudicial. At one point during the above-quoted colloquy, defense counsel stated that Denise Pierce's prior statement to the domestic relations court was "her statement of what occurred"; at another point, defense counsel stated that it constituted "her statements about this incident." The State contends that the prior statement concerned Denise Pierce's text messages to her sister, but this seems unlikely to have been the exclusive subject of a statement Denise Pierce made to the domestic relations court. The references in the above-quoted colloquy to the text messages appear to have been an attempt by defense counsel to make an analogy between Denise Pierce's text messages to her sister, which the trial court allowed in evidence, and Denise Pierce's written statement to the domestic relations court.

{¶ 87} Although Pierce did not proffer the contents of Denise Pierce's prior, allegedly inconsistent statement, a proffer is not required "if evidence is excluded during cross-examination." Evid.R. 103(A)(2). To the extent that lack of a proffer makes it difficult for a trial court to rule on an objection to a line of cross-examination concerning a prior inconsistent statement, the trial court can always request a proffer. But because a proffer was not required by Evid.R. 103(A)(2), we must accept trial counsel's representation that the prior statement was inconsistent with Denise Pierce's trial testimony, and concerned the incident about which she testified.

{¶ 88} Denise Pierce and the defendant Pierce were the only two persons present when he allegedly strangled her. He testified in his own defense, and denied that he touched her neck. Therefore, the credibility of Denise Pierce's testimony was crucial to the outcome of the case. We cannot, therefore, conclude that the trial court's error in sustaining the State's objection to Pierce's proposed line of questioning concerning her prior, allegedly inconsistent statement was harmless.

{¶ 89} Pierce's sole assignment of error is sustained.


III

{¶ 90} Pierce's sole assignment of error having been sustained, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.

. . . . . . . . . . . .

FROELICH and HALL, JJ., concur.

Copies mailed to:

John J. Danish / Stephanie L. Cook
Troy B. Daniels
Wilmer Dechant, Jr.
Hon. Daniel G. Gehres