[Cite as *Hetzer-Young v. Elano Corp.*, 2014-Ohio-1104.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## GREENE COUNTY

REBECCA HETZER-YOUNG, et al

     Plaintiffs-Appellants

v.

ELANO CORPORATION, et al.

     Defendants-Appellees

Appellate Case No.    2013-CA-32

Trial Court Case No.   2011-CV-597

(Civil Appeal from
 Common Pleas Court)

. . . . . . . . . . .

# O P I N I O N

Rendered on the 21st day of March, 2014.

. . . . . . . . . . .

BRADLEY STOLL, Atty. Reg. No. 2263, 1710-12 Locust Street, Philadelphia, Pennsylvania 19103, MARY JANE TRAPP, Atty. Reg. No. 0005315, 1400 West Sixth Street, Suite 400, Cleveland, Ohio 44113, THOMAS INTILI, Atty. Reg. No. 0036843, 130 West Second Street, Suite 310, Dayton, Ohio 45402
     Attorneys for Plaintiffs-Appellants

ELIZABETH B. WRIGHT, Atty. Reg. No. 0018456, ANDREW H. COX, Atty. Reg. No. 0071459, STACEY A. GREENWELL, Atty. Reg. No. 0077909, CONOR A. McLAUGHLIN, Atty. Reg. No. 0082524, 3900 Key Center, 127 Public Square, Cleveland, Ohio 44114
     Attorneys for Defendant-Appellee

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} The Plaintiffs-Appellants in this case are Rebecca Hetzer-Young, individually and as personal representative of the Estate of Michael Young; Anise Nash, individually and as personal representative of the Estate of Ginny Young, deceased; and Elizabeth Lampe, individually and as personal representative of the Estate of Charles Lampe, deceased (collectively, "Plaintiffs"). The Defendants-Appellees are Elano Corporation and Unison Industries, LLC (collectively, "Unison").

{¶ 2} Plaintiffs contend that the trial court erred in granting summary judgment in favor of Unison. The decision was based on the court's earlier ruling, which excluded all of Plaintiff's expert testimony on causation as a sanction for spoliation of evidence. Plaintiffs further contend that the trial court abused its discretion in relying solely upon the testimony of a defense expert without first ruling on a pending *Daubert* challenge to the expert's testimony. In addition, Plaintiffs maintain that the trial court abused its discretion by striking spoliation rebuttal affidavits, and in failing to consider arguments supporting equitable relief from the court's spoliation judgment.

{¶ 3} We conclude that the trial court abused its discretion in awarding sanctions for alleged spoliation of evidence and precluding Plaintiffs from presenting expert testimony on causation. Because the trial court based its summary judgment decision on the lack of evidence of causation, summary judgment was also not properly rendered in favor of Unsion.

{¶ 4} We further conclude that the remaining assignments of error are moot, due to the disposition of the assignment of error relating to spoliation and summary judgment.

Accordingly, the judgment of the trial court will be reversed, and this cause will be remanded for further proceedings.

## I. Facts and Course of Proceedings

{¶ 5}     On March 13, 2005, Dr. Michael Young took his daughter, Ginny Young, and Ginny's boyfriend, Charles Lampe, for a short flight in his 1974 Grumman AA-5 Traveler airplane.   Dr. Young had previously purchased the airplane in November 2003.

{¶ 6}     After briefly cruising in the area of the Lawrence County Airport in Chesapeake, Ohio, Dr. Young made two approaches to Runway 26, but did not land the airplane.   On the second attempt, the airplane cleared some trees at the end of the runway, went into an aerodynamic stall, and crashed.   The airplane then caught on fire.   All three occupants of the plane were killed as a result of the crash.

{¶ 7}     Initially, the National Safety Transportation Board (NTSB) had custody of the wreckage.   After NTSB released the wreckage, Plaintiffs first inspected the wreckage on November 7, 2005, at storage facilities at the Sandusky Regional Airport.   At that time, the components of the aircraft engine were visually inspected and photographed.   According to Allan Fielder, one of Plaintiffs' experts, the entire exhaust system was distorted by impact forces.

{¶ 8}     The next inspection occurred at Anglin Aircraft Recovery ("Anglin") on December 14, 2005, after the wreckage had been transported to Anglin's facility.   Among those present were various representatives of Plaintiffs, including Fielder.   Also present were a representative of Lycoming Engineers, which had manufactured the airplane engine (a Lycoming O-329-E2G), and a representative (Hope Alexander) of Aviation Adjusting Associates, an

independent adjusting firm that had been retained by Global Aerospace ("Global"). Global insured the airplane and was the custodian of the wreckage.

{¶ 9}   At the time of the initial inspection, no muffler manufacturer had been identified. Both Fielder's and Lycoming's experience was that any identifying marks would be on the muffler assembly itself. However, the muffler did not contain any identifying marks. The muffler had been replaced in 1987, but the shroud on the muffler was original to the airplane's manufacture in 1974. In a subsequent inspection, the shroud of the muffler was cleaned and was found to contain the Elano name (Unison's predecessor), with a part number and manufacture date.

{¶ 10}   The inspection in December 2005 indicated that the shroud, outer case, header pipe, and tailpipe of the muffler had all been deformed by impact damage. The inspection further revealed that deformation of the outlet stack for the muffler impaired the participants' ability to view the internal flame tube of the muffler.   Accordingly:

> After discussions with the representatives of the insurer of the aircraft (custodian of the wreckage) and the engine manufacturer a decision was made to remove the outlet stack for a better view of the internal flame tube of the muffler. * * * The internal flame tube fragments were lodged in place in the area of the muffler outlet; however, the entire flame tube could not be viewed through the outlet stack. A pressure or flow test of the muffler was not feasible and would not have reliable results due to the damaged state of the muffler assembly. It was agreed by the parties present at the inspection to use a precision milling machine to cut open the muffler canister. This equipment would reduce the possibility of

damaging the internal components of the muffler. * * * Doc. #16, Exhibit D, June 30, 2010 Affidavit of Allen Fieldler, p. 4, ¶ 12.

{¶ 11} Subsequently, on August 21, 2006, McSwain Engineering received the propeller, engine, and engine accessories, including the muffler, from Anglin. McSwain had been retained to provide expert opinions to Plaintiffs. In March 2007, Plaintiffs filed suit against Lycoming and various other defendants, including Unison, in the Cuyahoga County Court of Common Pleas. Unsion did not assert spoliation as an affirmative defense at that time.

{¶ 12} After Unison requested an inspection of the muffler assembly, an inspection was held at McSwain Engineering on October 9, 2007. At that inspection, Unison did not ask that the muffler housing be re-secured for purposes of performing muffler air flow testing.

{¶ 13} On June 24, 2008, representatives of the defendants in the court action, including Unison, attended another joint inspection. At that time, small pieces of the internal baffle of the muffler were sectioned, or cut, so that optical and electron microscopic examination and chemical analysis could be performed. This would not have affected the ability to perform muffler air flow analysis, and Unison did not object to this process. Unison also did not ask that the muffler housing be re-secured for purposes of air flow testing prior to the sectioning of the baffle.

{¶ 14} In a report dated July 15, 2008, Plaintiffs' expert, Dr. Donald Sommer, stated that the crash was caused by the aircraft's inability to remain airborne after departure due to a power loss. Sommer attributed the power loss to a plugged muffler exit due to deterioration of internal components, exacerbated by a carburetor float that was of an "old, composite style incapable of producing the correct fuel/air ratio." Doc. #16, Exhibit C, Affidavit of Donald

Sommer, p. 1, ¶ 1, and Exhibit B attached to the Sommer Affidavit, p. 15.

{¶ 15}   Pursuant to Unison's request, the muffler parts were shipped to Unison's expert, Fowler, Inc., and a further inspection was held at that facility on September 4-5, 2008. Previously, on August 4, 2008, Unison had alerted Plaintiffs' counsel to a potential spoliation defense, but did not assert the specific nature of the claim.  Despite this assertion, Unison did not attempt to reseal the muffler for purposes of air flow testing; instead, Unison cut the muffler into separate parts, which precluded resealing of the muffler to allow air flow testing.

{¶ 16}   Subsequently, Unison's experts issued several reports regarding the cause of the accident.  On October 7, 2008, Dr. Gary Fowler, of Fowler, Inc., concluded that there was no evidence of a metallurgical defect in the muffler components.  He further concluded that oxidation of the baffle walls and end caps occurred gradually during engine operation, causing likely separation of small pieces that would have passed out from the exhaust (meaning, therefore, that the pieces would not have plugged the muffler).   Doc. #137, Exhibit A, p. 4.

{¶ 17}   In a report dated September 30, 2008, Dr. Lee Swanger, of Exponent, Inc., concluded that the material used to construct the muffler (type 321 stainless steel), was an acceptable choice for the construction of mufflers on the type of aircraft involved, subject to periodic inspections to detect impending failure, and that the thickness of deposits on the baffle indicated that the baffle did not fracture during the March 13, 2005 flight, but was fractured for some period of time prior to the accident.   Doc. #137, Exhibit C, p. 4.

{¶ 18}   In addition, in a report dated October 1, 2008, defense expert, Dr. C. Dennis Moore, noted that a slow-turning engine, like the one used on the subject airplane, would not be greatly affected by exhaust back pressure.  Doc. #137, Exhibit D, p. 6.  Moore also concluded

that Dr. Sommer's exemplar testing, which produced a back pressure of 3.9 psi by blocking the tailpipe with a piece of flame cone, would not have a significant effect on the output horsepower of the subject engine. *Id.* Moore was also critical of Plaintiffs for failing to use a borescope prior to cutting the muffler open, and for opening the muffler and precluding Unison's ability to test internal back pressure of the muffler during operation. However, Moore conducted his own back flow tests with an exemplar muffler, and rejected the possibility of any significant loss of horsepower to the engine using a range of back pressures produced by various blockages, including the blockages used by Plaintiffs' expert during his tests. *Id.* at pp. 6-7,14-25, and 36.

{¶ 19} Finally, William Jeffrey Edwards of Aviation Safety Consulting Services (Avsafe), concluded that Dr. Young caused the accident by failing to meet the standard of care required of pilots in maintaining and operating an airplane. Doc. #137, Exhibit C., pp.7-9, and 14-15. Edwards further stated that the condition of the muffler had no bearing on the accident. *Id.* at p. 16, ¶ 18. Instead, Edwards stated that:

> Exemplar flights were conducted at Lawrence County Airpark on June 5, 2008 to better understand the location of the touchdown and rotation as reported by the eyewitness and to gain information on local flying conditions at the accident Airpark. Exemplar flying confirmed that the late go around decision by Dr. Young would not leave enough distance to safely clear the trees. Based on the exemplar flying at the Lawrence County Airpark, the cause of the accident was Dr. Young's failure to landing [sic] in the landing zone and his late decision to abort the landing and to attempt a go around that result[ed] in the subsequent stall of the aircraft. *Id*. at pp. 33-34, Section 1.17, ¶ 1.

{¶ 20}    The airplane involved in the accident was sold to its first purchaser in 1974, and was more than 30 years old at the time of the accident.   In the original action in Cuyahoga County, the trial court granted summary judgment in favor of several defendants, including Lycoming and Unison, based on the 18-year statute of repose in the General Aviation Revitalization Act of 1994, 49 U.S.C. 40101.   *See   Hetzer-Young v. Precision Airmotive Corp*., 184 Ohio App.3d 516, 2009-Ohio-5365, 921 N.E.2d 683, ¶ 2 and 23-24 (8th Dist.).   On appeal, the Eighth District Court of Appeals reversed the judgment in part, and affirmed in part.   The court of appeals held that summary judgment had been improperly rendered in Unison's favor, due to the existence of genuine issues of material fact concerning whether a new replacement muffler had been installed in August 1987, which would have been within 18 years of the March 2005 accident.   *Id.* at ¶ 54-55.    The judgment was affirmed, however, with respect to the other defendants.   *Id.* at ¶ 56-80.

{¶ 21}    The decision of the court of appeals was issued on October 8, 2009. Subsequently, Plaintiffs dismissed the action without prejudice, pursuant to Civ.R. 41(A)(1)(a), in September 2010. They refiled the action against Unison in the Montgomery County Court of Common Pleas in November 2010.   In June 2011, the case was transferred to the Greene County Common Pleas Court because Unison's principal place of business was in Greene County, rather than Montgomery County.   The action then proceeded in Greene County.

{¶ 22}    Plaintiffs' complaint against Unison asserted several counts, including strict liability, negligence, misrepresentation, concert of action, and willful, wanton, and outrageous conduct.   Unison's answer raised various defenses, including the contention that Plaintiffs' complaint should be dismissed, based on Plaintiffs' spoliation of critical evidence.   In July 2012,

the trial court filed a supplemental case management order, indicating that trial would take place in June 2013. Discovery was to be completed by November 1, 2012, and the deadline for filing summary judgment motions was November 15, 2012.

{¶ 23} On November 14, 2012, Unison filed a motion for sanctions based on Plaintiffs' alleged spoliation of evidence. In the motion, Unison alleged that Plaintiffs failed to properly document or photograph the muffler's immediate post-accident condition using a borescope. Unison also alleged that it had been deprived of an opportunity to conduct a back pressure test on the muffler because Plaintiffs had cut open the muffler. Unison, therefore, asked the court to either dismiss the complaint or preclude Plaintiffs' experts from testifying that the muffler's condition caused or contributed to a loss of power to the engine. Unison also filed a motion for summary judgment on the same day. Among other things, Unison argued that without expert evidence of causation, Plaintiffs would not be able to establish that Unison's product caused the accident.

{¶ 24} On November 15, 2012, Plaintiffs also filed a motion for sanctions, based on Unison's alleged spoliation of evidence. In this regard, Plaintiffs argued, first, that Unison's spoliation motion had no merit, because the muffler in its post-accident condition did not resemble its pre-impact state in terms of blockage. Plaintiffs' second argument was that the back pressure created by the compressed muffler canister, which was damaged by the impact, was completely irrelevant to the pre-impact condition of the muffler. Finally, Plaintiffs contended that by cutting the muffler into pieces in September 2008, Unison precluded Plaintiffs from being able to defend against the spoliation defense. During November 2012, both sides also filed motions to exclude testimony of expert witnesses.

**{¶ 25}** In January 2013, the trial court issued a judgment entry granting Unison's motion for sanctions. The court ordered that Plaintiffs would be precluded from offering any opinion testimony concerning the post-crash condition of the muffler, including any opinions related to or based on deterioration of the flame cone and its end cap, and any resulting increase in back pressure and decrease in engine power. The court also held that Plaintiffs' motion for spoliation was moot, and did not address the merits of the motion.

**{¶ 26}** Following the court's decision, Plaintiffs filed a motion for relief from the January 11, 2013 order. They also filed various affidavits challenging the testimony of defense expert, Dr. Moore. In March 2013, the trial court denied Plaintiffs' motion for relief, and granted a motion Unison had filed, challenging the admission of the affidavits, which were from new expert witnesses. Subsequently, in May 2013, Plaintiffs filed another motion for relief from judgment and for sanctions. This motion was based on the fact that Global was Unison's insurance carrier, and had consented at the December 2005 inspection to the opening of the muffler. Various other motions, primarily motions in limine to exclude expert and witness testimony, were filed by both sides during May 2013. Without ruling on any of these motions, the trial court issued an entry on May 14, 2013, granting Unison's motion for summary judgment. The court concluded that in view of the sanction imposed in the spoliation entry, there was insufficient evidence for Plaintiffs to be able to survive summary judgment. The same day, the trial court filed an amended entry granting summary judgment to Unison.

**{¶ 27}** Plaintiffs appeal from the January 11, 2013 spoliation entry, the March 1, 2013 entry granting Unison's motion to exclude Plaintiffs' late-disclosed expert opinions and denying relief from the January 11, 2013 entry, and the May 14, 2013 amended entry granting Unison's

motion for summary judgment.

## II. Did the Trial Court Err in Granting Summary Judgment
## Based on Its Earlier Spoliation Decision?

{¶ 28}    Plaintiffs' First Assignment of Error states that:

The Trial Court Erred as a Matter of Law in Awarding Summary Judgment to Appellees in this Products Liability Action Based upon and as a Consequence of Its Earlier Order Excluding All of Appellant's Experts' Causation Testimony as a Sanction for "Spoilation" of Evidence.

{¶ 29}    Under this assignment of error, Plaintiffs argue that opening a window in the muffler (which could have been resealed), in order to examine the interior was an accepted investigative technique and was not a material or prejudicial change in the muffler.    Plaintiffs, therefore, maintain that the trial court erred in granting the motion for sanctions, and in subsequently basing its summary judgment decision on the lack of evidence of causation. Conversely, Unison maintains that all requirements for spoliation have been met, and that preclusion of the testimony was appropriate.

In product liability cases where evidence is intentionally or negligently "spoiled" or destroyed by a plaintiff or his expert before the defense has an opportunity to examine that evidence for alleged defects, a court may preclude any and all expert testimony as a sanction for "spoliation of evidence." In such cases, the intent of the spoliator in destroying or altering evidence can be inferred from the surrounding circumstances. In other words, intent can be inferred from the fact

that the evidence was destroyed prior to the commencement of any litigation against the defendant and there is only a potential for litigation. Therefore, the plaintiff is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action. (Citations omitted.) *Cincinnati Ins. Co. v. General Motors Corp.,* 6th Dist. Ottawa No. 94OT017, 1994 WL 590566, *3 (Oct. 28, 1994).

{¶ 30} In such situations, "the defendant must first establish (1) that the evidence is relevant; (2) that the plaintiff's expert had an opportunity to examine the unaltered evidence; and (3) that, even though the plaintiff was contemplating litigation against the defendant, this evidence was intentionally or negligently destroyed or altered without providing an opportunity for inspection by the defense." *Id.* at *4, citing *Hirsch v. General Motors Corp.*, 266 N.J.Super. 222, 628 A.2d 1108, 1118 (1993). Once this threshold showing has been made:

"[T]he burden then shifts to the proponent of the evidence to prove that the other side was not prejudiced by the alteration or destruction of the evidence. The test for prejudice is whether there is a reasonable possibility, based on concrete evidence, that access to the evidence which was destroyed or altered, and which was not otherwise obtainable, would produce evidence favorable to the objecting party." *Nationwide Mut. Fire Ins. Co. v. Ford Motor Co.*, 174 F.3d at 804, citing *Bright v. Ford Motor Co.* (1990), 63 Ohio App.3d 256, 578 N.E.2d 547. In applying this test, the trial court "must determine the degree of prejudice to the defendant and impose a sanction commensurate with that degree of prejudice." *Loukinas v. Roto-Rooter Servs. Co.*, 167 Ohio App.3d 559, 2006-Ohio-3172, 855

N.E.2d 1272, ¶ 14 (1st Dist.), quoting *Cincinnati Ins. Co.* at *4.[1]

**{¶ 31}** Review of a spoliation ruling "requires a determination of whether the trial court abused its discretion in determining an appropriate sanction." *Holiday v. Ford Motor Co.*, 8th Dist. Cuyahoga No. 86069, 2006-Ohio-284, ¶ 26, citing *Transamerica Ins. Group v. Maytag*, 99 Ohio App.3d 203, 205, 650 N.E.2d 169 (9th Dist. 1994). *See, also*, *Simeone v. Girard City Bd. of Edn.*, 171 Ohio App.3d 633, 2007-Ohio-1775, 872 N.E.2d 344, 355, ¶ 69 (11th Dist.).

**{¶ 32}** An abuse of discretion " 'implies that the court's attitude is unreasonable, arbitrary or unconscionable.' " (Citation omitted.) *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). However, "an abuse of discretion most commonly arises from a decision that was unreasonable." (Citations omitted.) *Wilson v. Lee*, 172 Ohio App.3d 791, 2007-Ohio-4542, 876 N.E.2d 1312, ¶ 11 (2d Dist.). "Decisions are unreasonable if they lack a sound reasoning process to support them." *Id.*, citing *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

**{¶ 33}** In contending that the trial court did not abuse its discretion, Unison argues that the court's error must have been more than an error of law. However, as we recently stressed, "We have rejected the more-than-an-error-of-law formulation for abuse of discretion, concluding that '[n]o court * * * has the authority, within its discretion, to commit an error of law.' " *State v. Pierce*, 2011-Ohio-4873, 968 N.E.2d 1019, ¶ 72 (2d Dist.), quoting *State v. Beechler*, 2d Dist.

---

[1] We note that *Nationwide Mut. Fire Ins. Co.* was overruled in 2009, insofar as it held state law applicable to federal spoliation. Instead, federal courts have inherent power to craft spoliation sanctions. *See Adkins v. Wolever*, 554 F.3d 650, 651 (6th Cir.2009). However, federal and Ohio law apply the same standards with respect to the threshold showing of relevance, the duty to preserve, and so forth. *See R.C. Olmstead, Inc. v. CU Interface, LLC,* 657 F.Supp.2d 878, 887 (N.D.Ohio 2009).

Clark No. No. 09-CA-54, 2010-Ohio-1900, ¶ 70.

{¶ 34}   After reviewing the record in the case before us, we conclude that the trial court abused its discretion in imposing sanctions for spoliation of evidence.  Based on the damaged condition of the muffler from the crash, testing the damaged muffler for back pressure would be of marginal, if not questionable relevance. The more relevant and determinative evidence is the defense expert's successful back pressure testing of an identical, intact muffler, and his conclusion that a range of back pressures and blockages, including those set forth by Plaintiffs, would not affect engine operability.[2]

{¶ 35}   In this regard, we note that the October 1, 2008 report of Dr. Moore (the only defense expert to claim the effects of spoliation) indicates that Dr. Moore pressure-tested an exemplar muffler as well as a muffler that had been cut to resemble the subject flame cone, based on the earliest photographs available.   Motion of Defendants Elano Corporation and Unison Industries, LLC, for Sanctions for Spoliation of Evidence, Docket #91, Exhibit A attached to the Affidavit of C. Dennis Moore, pp. 14-25.   In this regard, Dr. Moore noted that "Although no large, loose flame cone pieces were found in the muffler, and it is virtually certain that the flame cone deteriorated with small pieces being expelled one by one, the cut out flame cone piece represents the largest possible flame cone blockage, however improbable. The cut end cap represents the maximum possible blockage that the subject muffler could have seen."   *Id.* at p. 17.   Based on his test results, Dr. Moore concluded that:

A slow-turning engine, such as an O-320, is not greatly affected by back

---

[2]   Generally, back pressure refers to increased pressure of exhaust gases exiting an engine when restricted by the exhaust system. Back pressure generally has an inverse relationship to engine power.   Doc.# 16, Exhibit C, September 2, 2010 Affidavit of Donald Sommer, ¶ 12.

pressure. Thus, it is not surprising that Exponent's testing demonstrated that, across a range of back pressures produced by various blockages, including ones similar to that used by Mr. Donald Sommer in his tests, there was no significant effect on horsepower. Mr. Sommer's own tests also demonstrate the lack of sensitivity of the engine output to back pressure. *Id*. at p. 36.

{¶ 36} As an additional matter, Plaintiffs provided the trial court with evidence, prior to the court's spoliation decision, that sectioning of an exemplar muffler in the same manner as was done to the subject muffler, followed by resealing of the muffler and application of pressure, "demonstrated that a muffler housing, sectioned the same as the subject muffler during the plaintiffs' initial inspection, could be resealed and would perform the same as its original condition in a static pressure test." Doc. #16, Exhibit B, August 31, 2010 Affidavit of Richard H. McSwain, PhD., P.E., ¶ 12. Accordingly, we see no possible prejudice to Unison from the opening of the muffler.

{¶ 37} Furthermore, with respect to the borescope, Unison failed to establish the relevance of this procedure. As was noted, the muffler was significantly damaged as a result of the crash. There is also no evidence that the internal pieces of the muffler were disturbed in any way when the cover of the muffler canister was cut with a precision saw and rolled back. Dr. Moore admitted that both a borescope and opening the canister would allow access for telling what parts had been deformed in the crash. Plaintiffs' Memorandum of Law in Support of their Motion to Preclude Testimony from Defense Expert, Dennis Moore, Doc. #100, Exhibit H, Deposition of C. Dennis Moore, pp. 77-78.

{¶ 38} Dr. Moore expressed the opinion that pieces of the flame cone "may" have been

lost, but there is no evidence that this occurred. *Id*. at p. 81-82. To the contrary, the evidence indicated that the cover was carefully cut and rolled back so that the parties conducting the inspection could look at the interior of the muffler. However, once again, this matter is of little relevance, because the issue, according to both sides, was whether the back pressure from the muffler exhaust caused the engine to lose power. Dr. Moore was able to conduct testing of an exemplar muffler and opine that the maximum possible blockage across the potential ranges of back pressure would have not caused the engine to lose power.

{¶ 39} Accordingly, the trial court's decision to grant Unison's motion for spoliation was an abuse of discretion. Furthermore, even if a sanction had been appropriate, the court also abused its discretion by imposing an unreasonable sanction.

{¶ 40} "Ordinarily, Ohio courts have followed the policy of imposing the least severe sanction, or at least a sanction short of outright dismissal of the action with prejudice, unless the plaintiff's conduct evidences bad faith." *Transamerica Ins. Group*, *Inc*., 99 Ohio App.3d at 206-207, 650 N.E.2d 169 (9th Dist.1994), citing *Evans v. Smith*, 75 Ohio App.3d 160, 163, 598 N.E.2d 1287 (1st Dist.1991). "The degree of prejudice suffered by the defendant is the major consideration for determining the sanction. * * * Thus, a trial court must determine the degree of prejudice to the defendant and impose a sanction commensurate with that degree of prejudice." (Citation omitted.) *Holiday*, 8th Dist. Cuyahoga No. 86069, 2006-Ohio-284, at ¶ 21.

{¶ 41} As was noted, the evidence in question was of marginal, if not questionable relevance. By precluding Plaintiffs' experts from testifying about "the post-crash condition of the muffler, including any opinions relating to or based on the deterioration of the flame cone and its end cap, and any resulting increase to back pressure and decrease in engine power," the trial

court imposed a sanction that was unreasonable and unrelated to the degree of prejudice, if any, that Unison suffered.

{¶ 42}   Furthermore, the trial court's grant of summary judgment was based solely on the fact that Plaintiffs could not establish causation due to the exclusion of their expert testimony.   In view of our prior conclusions regarding spoliation, the court also erred in rendering summary judgment in favor of Unison on this basis.

{¶ 43}   Accordingly, Plaintiffs' First Assignment of Error is sustained.   The judgments of the trial court granting sanctions for spoliation, and the amended judgment granting summary judgment in Unison's favor will be reversed, and this cause will be remanded for further proceedings.

III.   Did the Trial Court Err in Relying

Solely on Dr. Moore's Testimony?

{¶ 44}   Plaintiffs' Second Assignment of Error states that:

The Trial Court Abused Its Discretion by Relying Solely upon Testimony

of a Defense Expert Who Was the Subject of a pending *Daubert* Challenge

Without First Ruling on That Challenge.

{¶ 45}   Under this assignment of error, Plaintiffs contend that the trial court erred in relying on the opinions of defense expert, Dr. Moore, without having first ruled on Plaintiffs' *Daubert* challenge to Moore's testimony.   In response, Unison argues that the trial court is presumed to have denied the motion, because all motions not ruled on by trial courts are assumed on appeal to have been considered and rejected.

{¶ 46} In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the United States Supreme Court held that trial courts must act as "gatekeepers" of scientific testimony, This role "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 593-594. A few years later, the Ohio Supreme Court adopted this role for Ohio state court trial judges. *See Miller v. Bike Athletic Co.*, 80 Ohio St.3d 607, 687 N.E.2d 735 (1998), and *Terry v. Caputo*, 115 Ohio St.3d 351, 2007-Ohio-5023, 875 N.E.2d 72, ¶ 24.

{¶ 47} In *Winner Bros., L.L.C. v. Seitz Elec., Inc.*, 182 Ohio App.3d 388, 2009-Ohio-2316, 912 N.E.2d 1180 (2d Dist.), we noted that:

"The test for reliability requires an assessment of the validity of the expert's methodology, by applying with flexibility several factors set forth in *Daubert*. * * * The trial court should first assess whether the method or theory relied upon has been tested. * * * Next, it should consider whether the theory has been the subject of peer review, and then whether the method has a known or potential error rate[.] * * * Finally, *Daubert* instructs trial courts to look at whether the theory has gained general acceptance in the scientific community[.] * * * None of these factors, of course, is dispositive of the inquiry, and when gauging the reliability of a given expert's testimony, trial courts should focus 'solely on principles and methodology, not on the conclusions' generated." (Citations omitted.) *Winner Bros.* at ¶ 47, quoting *Terry* at ¶ 25.

{¶ 48} Prior to the trial court's decision on spoliation, Plaintiffs filed a motion to

exclude Dr. Moore's testimony, and raised the reliability of his opinion under the principles enunciated in *Daubert* and *Miller*. *See* Plaintiffs' Memorandum of Law in Support of their Motion to Preclude Testimony from Defense Expert Dennis Moore, Doc. #100, p. 13. The trial court issued its spoliation decision less than a month later, without having ruled on the motion to exclude. Shortly thereafter, Plaintiffs filed a reply memorandum in support of their motion to exclude Moore's testimony, together with affidavits from experts in the field of thermal fluids that strongly dispute the validity of Moore's statements about various scientific principles (Bernoulli's principle, the law of conservation of mass, and Newton's Second Law of Motion). Moore had relied on his interpretation of these principles to support his theory that the muffler had been materially altered so that it could not be reassembled for pressure testing. *See* Doc. #133, Affidavit of Ashwani Gupta, and Doc. #134, Affidavit of Wagdi George Habashi.

{¶ 49} Plaintiffs additionally filed a motion, asking the trial court to reconsider its decision on the motion for spoliation. The trial court declined to do so, and also rejected the affidavits of Plaintiffs' experts in March 2013. *See* Doc. #152, filed on March 1, 2013.

{¶ 50} There is logic in the contention that a court should consider a challenge to an expert's testimony prior to ruling on spoliation. If the scientific conclusions supporting the expert's claims of spoliation are invalid, there would be no reason to grant a motion for sanctions. However, we need not consider whether the trial court abused its discretion in the case before us, because we have already determined that the court erred in granting the motion for spoliation. Accordingly, the Second Assignment of Error is overruled, as moot.

IV. Did the Trial Court Abuse Its Discretion

By Striking the Spoliation Rebuttal Affidavits?

**{¶ 51}** Plaintiffs' Third Assignment of Error is as follows:

The Trial Court Abused Its Discretion by Striking the Spoliation Rebuttal Affidavits Submitted in Families' Reply Brief to the *Daubert* Challenge to Moore.

**{¶ 52}** Under this assignment of error, Plaintiffs contend that the trial court erred in striking the rebuttal affidavits of Drs. Habashi and Gupta, as well as the supplemental affidavits of Plaintiffs' other experts that were submitted for purposes of challenging the scientific validity of Dr. Moore's opinions. In response to Plaintiffs' argument, Unison contends that the trial court did not abuse its discretion when it struck these expert opinions, because Plaintiffs had ample time to discover Dr. Moore's opinions regarding spoliation, and Plaintiffs' new experts and any supplemental opinions of prior experts were not disclosed before the deadline for disclosing expert testimony had elapsed.

**{¶ 53}** We have previously indicated that issues pertaining to the expert opinions and the *Daubert* challenge to Dr. Moore's testimony are moot, in view of the trial court's erroneous imposition of sanctions for spoliation. Accordingly, the Third Assignment of Error is overruled, as moot.

V. Did the Trial Court Abuse Its Discretion

in Failing to Consider Arguments about Equitable Relief?

**{¶ 54}** Plaintiffs' Fourth Assignment of Error states that:

The Trial Court Abused Its Discretion by Failing to Consider the Arguments Supporting Equitable Relief From the Trial Court's Spoliation

Judgment.

{¶ 55}    Under this assignment of error, Plaintiffs contend that the trial court should have considered the application of equitable estoppel.   Plaintiffs' argument in this regard relates, first, to the participation of Global and its representative, Hope Alexander, in the December 14, 2005 inspection.   Global insured the airplane and owned the wreckage at the time.   Alexander, as Global's representative, agreed to the opening of the muffler casing at the inspection.   Plaintiffs later discovered that Global represented Unison as well as the owner of the airplane.

{¶ 56}    As another basis for equitable estoppel, Plaintiffs rely on Unison's failure to imprint the muffler with identifying marks, as required by 14 C.F.R. 45.15.   Finally, Plaintiffs argue that Unison, itself, is guilty of spoliation, because its actions in cutting apart the muffler in September 2008 precluded Plaintiffs from being able to defend against the spoliation claim. Specifically, if Plaintiffs knew that spoliation would be based on the inability to test the muffler for back pressure, they could have resealed it and could have demonstrated that opening the canister had no effect.

{¶ 57}    In responding to this assignment of error, Unison argues that equitable estoppel is not properly part of this appeal because Plaintiffs' Second Motion for Relief from Judgment was not included in the notice of appeal that Plaintiffs filed.   We disagree.   The trial court granted summary judgment to Unison after Plaintiffs' May 2013 motion for relief from judgment was briefed by both sides.   As a result, we assume that the trial court overruled the motion, even though the court did not specifically rule on it and granted summary judgment in favor of Unison. *See, e.g., Clark Cty. Bd. of Commrs. v. Stewart*, 2d Dist. Clark No. 09-CA-104, 2010-Ohio-5290, ¶ 16 (plaintiffs' motion for relief from admissions was considered to have been

overruled when the trial court failed to rule on the motion, but instead granted summary judgment against plaintiffs).

{¶ 58}   Unison also argues that Alexander cannot be considered to have acted on its behalf, because she and Global were representing a different party at the time of the December 14, 2005 inspection.   In addition, Unison contends that Plaintiffs' motion for sanctions for spoliation was without merit, because Plaintiffs were present at the inspection when the muffler was completely cut apart, and failed to object.   Unison has not responded to the allegation of a violation of 14 C.F.R. 45.15, based on the failure to properly label the muffler.

{¶ 59}   Again, this assignment of error is moot, in view of our conclusion that the trial court erred in granting the motion for sanctions and in rendering summary judgment against Plaintiffs.   Accordingly, the Fourth Assignment of Error is overruled, as moot.


VI.   Conclusion

{¶ 60}   Plaintiffs' First Assignment of Error having been sustained, and the Second, Third, and Fourth Assignments of Error having been overruled as moot, the judgment of the trial court is reversed, and this cause is remanded for further proceedings.



. . . . . . . . . . . .


FROELICH, P.J. and HALL, J., concur.

Copies mailed to:

Bradley Stoll
Mary Jane Trapp
Thomas J. Intili
Elizabeth B. Wright
Andrew H. Cox
Stacey A. Greenwell
Conor A. McLaughlin
Hon. Stephen Wolaver