[Cite as *State v. McClain*, 2016-Ohio-838.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 26764 |
| | : | |
| v. | : | T.C. NO. 14CR1581 |
| | : | |
| JAMES McCLAIN | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

**O P I N I O N**

Rendered on the ___4th___ day of _____March_____, 2016.

. . . . . . . . . .

CHRISTINA E. MAHY, Atty. Reg. No. 0092671, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

DANIEL J. O'BRIEN, Atty. Reg. No. 0031461, 1210 Talbott Tower, 131 N. Ludlow Street, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, P.J.

{¶ 1} James McClain pled no contest to possession of heroin in an amount of 10 grams or more, but less than 50 grams, a felony of the second degree. The trial court sentenced him to two years in prison and suspended his driver's license for one year. McClain was ordered to pay court costs. The trial court stayed McClain's sentence

pending appeal.

{¶ 2} McClain appeals from his conviction, claiming that the trial court erred in failing to dismiss the charges due to the State's destruction of a police cruiser video recording and video recordings at the Montgomery County Jail. For the following reasons, the trial court's judgment will be affirmed.

## I. Background and Procedural History

{¶ 3} On August 6, 2014, the trial court held a hearing on McClain's motion to suppress, during which Dayton Police Officer Angela Woody was the sole witness. Her testimony established the following facts.

{¶ 4} At approximately 4:40 a.m. on April 30, 2014, Officer Woody was dispatched to the intersection of Hoover Avenue and James H. McGee Boulevard on a report that a white vehicle was stopped at the light and the driver was slumped over the steering wheel of the vehicle. The caller indicated that the driver had sat through several lights, and the caller was concerned about the driver's well-being.

{¶ 5} Upon her arrival, Officer Woody saw a vehicle sitting at the light, and the vehicle did not move when the light was green. Woody approached the vehicle and, in an attempt to get the driver's attention, knocked on the driver's window and all four windows. The driver did not respond. Woody could see that the driver was breathing, and she did not see any overt signs of injury. Officer Jerry Bell arrived, and he shined his cruiser's spotlight directly on the driver's face. At that point, the driver, who was later identified as McClain, began to awake.

{¶ 6} The officers had McClain exit his vehicle. The officers ultimately determined that McClain was not injured, but was intoxicated. Officer Woody could smell an odor of

an alcoholic beverage, McClain was very lethargic, and his speech was slurred. He failed the three field sobriety tests that Woody administered. Officer Woody placed McClain under arrest for operating a vehicle while intoxicated (OVI), read him his *Miranda* rights, did a pat down for weapons, and transported him to the Safety Building, where she administered a breathalyzer test. Afterward, Woody took McClain to the Montgomery County Jail.

{¶ 7} At the jail, Officer Woody did a full search prior to McClain's entry to the jail's receiving room. McClain was wearing a jacket, and Officer Woody located baggies in the front right pocket of the jacket. The baggies contained a tannish-white powdery substance, which she suspected was heroin. Woody indicated that there are video cameras in the receiving area of the jail, and the jail would possess those videos.

{¶ 8} Officer Woody testified that both her and Officer Bell's cruisers had cameras. Woody stated that the camera records whenever her lights and siren are on and every time someone gets into the back seat of the cruiser. She also indicated that she could activate the camera if she felt the need. After McClain's arrest, Woody selected a button to indicate that the subject on the video had been arrested. That selection identified the recording as one that should be preserved for future proceedings.

{¶ 9} McClain was indicted for possession of heroin in an amount of 10 grams or more, but less than 50 grams. The OVI charge was presented to the Dayton Municipal Court, where separate proceedings occurred.

{¶ 10} On June 10, 2014, McClain moved in the common pleas court to suppress all evidence seized as a result of his interaction with the police and any statements he made. At the conclusion of the August 6 hearing on the motion, described above, the

trial court instructed the parties to make efforts to obtain the cruiser and jail videos and the discovery from the OVI case. The following day, the trial court set a scheduling conference for August 13, 2014.

{¶ 11} The record does not reflect what occurred at the August 13 scheduling conference, if one were held. That day, however, McClain filed a request for discovery, which included a demand that the State "[p]reserve and provide any video/audio tapes * * * including any and all police cruiser audio/videos at the scene from the two (2) separate cruisers[;] [a]ny and all videos * * * from the Sheriff's Department at the Montgomery County Jail, at the outer-receiving area that involves the reception of James McClain in the jail with Ptl. Angela Woody, et al. and of the inside of the reception and book-in area of the jail." (Doc. #16, ¶ 8.) The trial court also scheduled a hearing on a motion to suppress for September 5, 2014. The record does not contain a transcript of a hearing on September 5, 2014, and it is unclear whether any such hearing was held. (Neither party states that a hearing was held.)

{¶ 12} On September 11, 2014, the trial court set a scheduling conference for September 24, 2014. On September 25, 2014, the trial court scheduled a hearing on a motion to dismiss for November 21, 2014, although no written motion had been filed as of that date (September 25).

{¶ 13} On October 21, 2014, McClain filed a motion to compel discovery and a memorandum in support of a motion to dismiss; McClain's "motion to dismiss cause [or] suppress evidence" was filed on October 23. In his motion and memorandum, McClain stated that the State had failed to provide video recordings from the cruisers and the jail. He argued that the cruiser video was "highly relevant" to whether there was probable

cause to arrest him for OVI and that the videos of the jail would have shown what McClain was wearing on April 30. McClain asserted that such evidence would have shown that the jacket in which the heroin was found would not have fit him and did not belong to him. McClain's motion indicated that an appendix was attached, which would have included the docket sheet from the Dayton Municipal Court, the discovery demand filed in municipal court, an order from the municipal court granting McClain's motion to compel in the OVI case, and other documents. No supporting documents were attached to McClain's motion.

{¶ 14} The State opposed the motion to dismiss or suppress, providing the following chronology of events regarding the video recordings:

On May 21, 2014, Defendant filed a Discovery Demand in Dayton Municipal Court. On August 13, 2014, Defendant filed a Motion to Compel Discovery in Dayton Municipal Court and a Request for Discovery in Montgomery County Common Pleas Court. August 13, 2014, was the first date that Defendant made any requests as to video in Montgomery County Common Pleas Court.

This filing was made more than 90 days after the arrest. Dayton Police Department has a 90 day retention policy on cruiser camera. The Montgomery County Jail has a 60 day retention policy of jail videos. Despite the Montgomery County Prosecutor's efforts, there was no way to obtain the videos at the time of Defendant's requests. Review of the dockets will show that Defense Counsel never filed a Motion to Preserve this evidence in either Dayton Municipal Court or Montgomery County

Common Pleas Court.

The State asserted that McClain could not demonstrate that the evidence was materially exculpatory and, at best, the video recordings were potentially useful. The State further argued that comparable evidence was available by other reasonable means. Finally, the State asserted that McClain could not carry his burden to demonstrate bad faith on the part of the State. The State did not provide any supporting documentation.

{¶ 15} On December 16, 2014, the trial court overruled McClain's motion. The trial court found that McClain had not met his burden of proving that a video recording of his interaction with the police at his vehicle would be materially exculpatory, noting that "there is evidence of Defendant's intoxication apart from the Dayton Police Department's cruiser cam video." The trial court noted the evidence of intoxication observed by the officers and the fact that McClain failed the breathalyzer test. The trial court concluded that probable cause had existed for McClain's arrest.

{¶ 16} With respect to the jail recording, the trial court stated that "the jail has an Inmate Property Receipt describing Defendant's coat at the time of his booking. Thus, this information he seeks regarding his clothing is available to Defendant should he choose to refute it or otherwise use it as part of his defense." The trial court found that, at most, the missing video recordings would be potentially useful to McClain, and there was no evidence to support a finding of bad faith. The court stated, "The record of this Court demonstrates that Defendant requested these recordings of the booking more than ninety days after his arrest and more than thirty days after they were erased per the policy of the Montgomery County Sheriff's office."

{¶ 17} In June 2015, McClain pled no contest to possession of heroin. The trial

court sentenced him accordingly.

{¶ 18} McClain appeals from his conviction, raising one assignment of error.

## II. Standard for Destruction of Video Recordings by the State

{¶ 19} McClain's sole assignment of error states:

The Trial Court below committed prejudicial error in overruling the Defendant-Appellant's Motion to Dismiss this case and Suppress Evidence when the total record shows the State of Ohio allowed, after request by the Defendant, and in violation of Rule 16, *Brady v. Maryland* (1963), 291 Md. 261 material, *Kyles v. Whitley* (1995) 115 S. Ct. 1555 material and *Giglio v. United States* (1972) 92 S. Ct. 763 and the Montgomery County Rules of Court, the destruction of exculpatory evidence, including numerous videotapes from multiple locations, which would have conclusively shown that the jacket which contained the illegal heroin was not being worn by the Defendant at the time of his arrest, but was in fact retrieved from the back of the car he was driving. This Defendant was demonstrably larger, heavier, by 50-60 pounds and taller than the owner of the jacket which had been left in the car which the Defendant was driving at the time of his arrest, but which he did not own.

{¶ 20} In his assignment of error, McClain claims that his due process rights were violated by the destruction of the cruiser video and the video recording at the jail. He argues that the video recordings were materially exculpatory, and that the State's apparent destruction of the videos required the dismissal of the charges against him. McClain cites *State v. Benton*, 136 Ohio App.3d 801, 737 N.E.2d 1046 (6th Dist.2000),

*State v. Benson*, 152 Ohio App.3d 495, 2003-Ohio-1944, 788 N.E.2d 693 (1st Dist.), and *State v. Blair*, 2d Dist. Montgomery No. 25578, 2014-Ohio-1279.

**{¶ 21}** The Due Process Clause of the Fourteenth Amendment to the United States Constitution protects a criminal defendant from being convicted when the State either fails to preserve materially exculpatory evidence or destroys, in bad faith, potentially useful evidence. *E.g., State v. White*, 2015-Ohio-3512, 37 N.E.3d 1271, ¶ 58 (2d Dist.). Evidence is "materially exculpatory" if it (1) possesses "an exculpatory value that was apparent before the evidence was destroyed" and (2) is "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta*, 467 U.S. 479, 489, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984); *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 856, ¶ 74.

**{¶ 22}** "In contrast, evidence is not materially exculpatory if it is merely potentially useful. Potentially useful evidence indicates that the evidence may or may not have incriminated the defendant. The failure to preserve evidence that by its nature or subject is merely potentially useful violates a defendant's due process rights only if the police or prosecution acted in bad faith." *State v. Cox*, 2d Dist. Montgomery No. 25477, 2013-Ohio-4941, ¶ 88. "The term 'bad faith' generally implies something more than bad judgment or negligence. 'It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud.'" (Citations omitted.) *Powell* at ¶ 81.

**{¶ 23}** The defendant bears the burden to prove that the evidence in question was materially exculpatory, not merely potentially useful. *Id.* at ¶ 74.

**{¶ 24}** At oral argument, McClain's counsel suggested that the State had admitted

error by having now adopted a discovery policy that preserves video evidence. We have nothing before us reflecting such a policy, what type of potential evidence it preserves, and how it is implemented. Regardless, the adoption of such a procedure, as meritorious and commendable as that may be, is not an acknowledgement of any legal error by the State or the trial court in a case arising prior to the adoption of that policy, such as the case before us.

**{¶ 25}** McClain's counsel further advocated at oral argument that the State should bear the burden of establishing that any destroyed evidence was not materially exculpatory, particularly when a defendant faced potential incarceration. As an intermediate court of appeals, we lack the authority to alter the burden of proof mandated by Ohio Supreme Court and United States Supreme Court precedent. *See State v. Beavers*, 2012-Ohio-6222, 986 N.E.2d 516, ¶ 26 (2d Dist.).

> Within the judicial branch, the Supreme Court is supreme. Whether we agree or disagree with its reasoning, or even whether we agree that it is acting within its constitutional powers, we are bound to follow its edicts. Any rule to the contrary would permit anarchy within the judicial branch of the government, since different courts inferior to the Supreme Court might reach multiple conclusions, thereby depriving the Supreme Court of its power to promote uniformity and predictability within the judicial department.

*Hapner v. Grange Mut. Cas. Co.*, 2d Dist. Montgomery No. 14510, 1995 WL 371069, *2 (June 23, 1995).

**{¶ 26}** Due to this limitation, we previously rejected the position set forth in

*Columbus v. Forest*, 36 Ohio App.3d 169, 522 N.E.2d 52 (10th Dist.1987), that when the defendant specifically requests that certain evidence be preserved and that evidence is subsequently destroyed or lost by the State, the burden shifts to the State to show that the evidence was not materially exculpatory. *Beavers* at ¶ 16-23. We recognized that we "are bound to follow to the dictates of the Ohio Supreme Court, which has chosen to follow *Trombetta*, *Youngblood* and [*Illinois v.*] *Fisher* [, 540 U.S. 544, 124 S.Ct. 1200, 157 L.Ed.2d 1060 (2004)]." *Beavers* at ¶ 26.

**{¶ 27}** This is not to say that we totally agree with *Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988) and its progeny. *See Beavers* at ¶ 25 (noting that *Youngblood* has been subject to criticism and, "[i]n our view, that criticism is well-deserved."); *see also*, *e.g.*, *State v. Frasure*, 11th Dist. Ashtabula No. 2007-A-0033, 2008-Ohio-1504, ¶ 46 ("We would be remiss if we did not voice our concern over the potential effect of [the *Youngblood*] bright-line test and the difficulty for a defendant to satisfy the bad faith standard.")

**{¶ 28}** In the analogous situation involving spoliation of evidence in a civil case, we have employed a shifting burden. Where a plaintiff or the plaintiff's expert has destroyed or altered evidence prior to being examined by the defendant, we have required the defendant to show "(1) that the evidence is relevant; (2) that the plaintiff's expert had an opportunity to examine the unaltered evidence; and (3) that, even though the plaintiff was contemplating litigation against the defendant, this evidence was intentionally *or negligently* destroyed or altered without providing an opportunity for inspection by the defense." (Emphasis added.) *Allstate Ins. Co. v. Pittman*, 2d Dist. Montgomery No. 26330, 2015-Ohio-699, ¶ 39, quoting *Hetzer-Young v. Elano Corp.*, 2d Dist. Greene No.

2013-CA-32, 2014-Ohio-1104, ¶ 30. If such is shown, the burden then shifts to the plaintiff to demonstrate that the defendant was not prejudiced by the alteration or destruction of the evidence. *Id.* The trial court must determine the degree of prejudice and impose an appropriate sanction for those circumstances.

{¶ 29} We note that, under their state constitutions, a number of courts have rejected *Youngblood* in favor of a balancing test. *See, e.g., State v. Morales*, 232 Conn. 707, 657 A.2d 585 (1995); *State v. Delisle*, 162 Vt. 293, 648 A.2d 632, 643 (1994); Dinger, *Should Lost Evidence Mean a Lost Chance to Prosecute?: State Rejections of the United States Supreme Court Decision in Arizona v. Youngblood*, 27 Am.J.Crim.L. 329 (2000). As expressed by the Supreme Court of Connecticut, "the sole fact of whether the police or another state official acted in good or bad faith in failing to preserve evidence cannot be determinative of whether the criminal defendant has received due process of law." *Morales* at 593.

{¶ 30} As cruiser cameras, body cameras, surveillance videos, and smart phone videos become more commonplace, the sources of evidence – both inculpatory and exculpatory – expand and change. It is government's (whether federal, state or local) responsibility to ensure due process in light of these changing sources.

{¶ 31} Oftentimes – and for good reasons – legal principles temporally lag behind cultural and technological events. Regardless, under current law, the defendant bears the burden to establish that missing evidence is "materially exculpatory" or that it was destroyed in "bad faith," a burden that is often overbearing.

> When evidence has been lost or remains untested "there is often no way for a defendant to ascertain the true extent of its exculpatory nature." It

may well be impossible for a criminal defendant to prove the exculpability

of lost evidence, and such a requirement would not further the *Brady* duty

to disclose.   In an extreme case, a prosecutor would be able to suppress

potentially exculpatory evidence by pleading its loss.

(Citation omitted).   *State v. Bailey*, 144 Vt. 86, 475 A.2d 1045, 1050 (1984), which

continues to apply to the Vermont Constitution.

### III. Analysis in light of the Record on Appeal

**{¶ 32}**   In denying McClain's motion, the trial court relied on information that is not in the record before us.   The record in this case references the companion OVI proceedings in the Dayton Municipal Court, and there is some discussion of the video recordings.   However, much of the documentation of the efforts to obtain the video records and of the bases for the apparent destruction of the records is not in the record.

**{¶ 33}** The transcript of the suppression hearing established that an OVI offense was being prosecuted in the Dayton Municipal Court, and defense counsel stated that he had not requested discovery in the OVI matter, because the prosecutor was "holding off on anything until this case is over."   Counsel clarified that the prosecutor would dismiss the OVI case "depending upon what happens over here [in common pleas court]."

**{¶ 34}** At the conclusion of the August 6 suppression hearing, the trial court asked, "Who's going to get this video?   * * * Because I don't want any delay."   The following discussion ensued:

MR. SCHOEN: The State will definitely make all requests from Dayton

Police Department in relation to a preservation of the video.   The State will

also call the Public Defender's Office noting that this initially on the OVI side

was Adelina Hamilton's case. The State's aware that Mike Dailey makes requests of all cruiser cam videos in relation to arrests. If there's a chance that DPD may have, you know, taped over this or it went out of existence, the hope is the Public Defender's Office would have it. Now, with that in mind, Mr. O'Brien then took over the case. So the State would ask that Mr. O'Brien request the discovery in his misdemeanor case because for all I know it could be sitting down there waiting him to just pick it up. And if that's the case, we would expect that Mr. O'Brien would deliver the OVI paperwork and the video. But the State will do everything it can in its power to do what it can to get the video, itself.

THE COURT: Yeah. In the interest of getting this resolved, I think that's a good plan. The State will, it seems odd, but I guess this is the way they do things that this has been bifurcated. Interestingly, there's a new statute that will shortly be in effect, I believe, that if there's a felony and a misdemeanor, they both come over here. So perhaps this won't be a problem in the future. However, for the time being, I would like the State to take those steps to try and find the video and the report. I would also ask Defense counsel, since you are counsel of record, that you make a request of the -- * * * The city prosecutor's office to get the discovery in this case including the disk and then if you get it, under reciprocal discovery -- * * * let Mr. Schoen know.

MR. O'BRIEN: Absolutely.

THE COURT: If he already has it, that's fine. You both have copies. If not,

whoever gets it shares it with the other side.

MR. O'BRIEN: And that absolutely goes without saying, Judge.  Only loose end here now is that they also have admitted there's a video of the outside receiving section which would become very critical in this case.  We will also want to get a copy of that video from the sheriff.

THE COURT: And I'm not sure if those are kept or not.  Can you check that out, please?

MR. SCHOEN: I can look into it and see what their preservation policies are.

THE COURT: Yeah. Because that one I think is more of a safety thing than anything else.  But go ahead and see if they have it.  See if you can get copies of that, too. Okay?

(Supp.Tr. at 44-47.)

**{¶ 35}** The record in this case does not contain the record of the OVI case in the Dayton Municipal Court stemming from McClain's interaction with the police on April 30, 2014.  Nor is there any documentation of either party's efforts to obtain the video recordings via the OVI case.

**{¶ 36}** The record indicates that additional hearings were scheduled on September 5, 2015 (motion to suppress) and November 21, 2014 (motion to dismiss) in this case. After filing his notice of appeal, McClain requested a "verbatim transcript of the court proceedings of the suppression hearing taken on 09/05/2014."  However, the record contains a transcript of the August 6, 2014 suppression hearing, not the September 5, 2014 suppression hearing (if one was held).  No request was made for a transcription of

a November 21, 2014 hearing, and the record does not indicate if such a hearing was held. In their briefs, neither party states that hearings were held on September 5 or November 21.

**{¶ 37}** The State and the trial court stated that the Dayton Police Department has a 90-day retention policy on cruiser camera recordings and that the Montgomery County Jail has a 60-day retention policy of jail videos. There is no evidence in the record of either of those policies (although neither party appears to contest this), nor is there evidence that the video recordings that McClain sought were destroyed pursuant to those policies. In fact, there is no evidence in the record that the video recordings have been destroyed, although apparently this is not in dispute.

**{¶ 38}** The State also indicates, and the trial court found, that an inmate property receipt is kept at the jail documenting the clothing that McClain was wearing at the time of his booking. No inmate jail receipt is included in the record.

**{¶ 39}** McClain attaches several exhibits to his appellate brief. "[A]ttachments to appellate briefs that are not a part of the record cannot be considered on appeal, as '[a] reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter.'" *State v. Shouse*, 2d Dist. Montgomery No. 26172, 2015-Ohio-3918, ¶ 42, quoting *State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500 (1978), paragraph one of the syllabus.

**{¶ 40}** In summary, it is unclear whether the trial court's decision made factual findings without evidentiary support for those findings or, instead, made factual findings based on the evidence before it, but that evidence was not made part of the record on appeal.

**{¶ 41}** Regardless, McClain has the burden on appeal "to show the existence and effect of the error he assigns, and to do so by specific reference to the trial record." *State v. Burkholder*, 2d Dist. Darke No. 1750, 2009-Ohio-5526, ¶ 5. In other words, McClain has the duty to provide a record which exemplifies the error he assigns. *Id.*, citing *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 400 N.E.2d 384 (1980).

**{¶ 42}** Here, the record does not support a conclusion that the video recordings were materially exculpatory. The only evidence in the record regarding McClain's encounter with the police on April 30, 2014 came from Officer Woody at the August 6, 2014 suppression hearing. She testified that McClain appeared to be intoxicated, and that he failed the field sobriety tests that she administered. McClain was given a breathalyzer test at the Safety Building and was then taken to jail. Woody further testified that McClain was wearing a jacket throughout their encounter, including at the jail, and that baggies of suspected heroin were located in a jacket pocket during a search at the jail. There is no evidence in the record to suggest that the cruiser video recordings or recordings at the jail would contradict her testimony.

**{¶ 43}** McClain stated in his motion and repeats in his appellate brief that he would have produced "two female witnesses who would have testified that the jacket * * * was in fact not his jacket but belonged to a smaller, thinner gentleman who had been with the ladies and Mr. McClain earlier in the evening." However, these potential witnesses did not testify or provide affidavits to the court, and McClain's unsworn representation does not constitute evidence. McClain also could have testified or presented an affidavit indicating that the jacket would not have fit him, but no such evidence was produced. Accordingly, McClain has not demonstrated that the video recordings are materially

exculpatory.

{¶ 44} Although the parties agree that the video recordings are no longer available, McClain has failed to establish that their destruction was due to bad faith on the part of the State. On August 6, 2014, the prosecutor represented, as an officer of the court, that he would "make all requests from Dayton Police Department in relation to a preservation of the video" and would call the Public Defender's Office to inquire whether a public defender had requested the cruiser video. The prosecutor also stated that he would look into obtaining the jail recordings and the jail's retention policies. There is no indication that the State failed to search for the video. In addition, there is no evidence regarding when the recordings were destroyed, whether they were destroyed pursuant to any retention policy, and whether they were destroyed after the State was asked to retain the videos. Accordingly, McClain has failed to establish that due process required the dismissal of the indictment due to the destruction of the videos.

{¶ 45} Based on the evidence before us, the trial court did not err in denying McClain's motion to dismiss or suppress evidence. McClain's assignment of error is overruled.

## IV. Conclusion

{¶ 46} The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

DONOVAN, P.J., concurs.

HALL, J., concurring:

{¶ 47} I join with my colleagues in affirming the judgment of the trial court. I write separately to say that I am not as critical of *Youngblood* and its progeny as the majority

is. To me, *Youngblood* strikes a reasoned balance on the question of who should bear the burden to prove that unavailable evidence would likely make a difference. In my view, most potential evidence that is not collected or preserved is not available because of innocent inadvertence to recognize or save material that has potential or sometimes theoretical evidentiary value. We should not assume that police or prosecutors will "suppress potentially exculpatory evidence by pleading its loss," as the Vermont Supreme Court said in *State v. Bailey*, quoted by the majority. Nor should we assume that a defendant or counsel will create a defense specifically related to unavailable potentially or theoretically valuable evidence only after its unavailability is discovered, as perhaps occurred in this case.

{¶ 48} McClain claims that the jacket containing the drugs that he was wearing when he was booked into jail was not his and did not fit him. This, he later argues, would have been evident if videos from the arrest and the booking had been available. But according to the state's unchallenged assertion in the trial court, the jacket was listed as part of McClain's property on the inmate property receipt, made when he was booked. And when he was released on bond the day after his arrest, McClain either possessed or had access to the jacket. If this ostensibly ill-fitting and unowned jacket was so important to his defense, it is McClain who could have retained it.

. . . . . . . . . . . . .

Copies mailed to:

Christina E. Mahy
Daniel J. O'Brien
Hon. Barbara P. Gorman